MARLIN FIREARMS CO. v. DINNAN.

(Circuit Court of Appeals, Second Circuit. April 2, 1906.)

No. 115.

PATENTS—INFRINGEMENT—"TAKE-DOWN" GUNS.

The Hepburn patent, No. 584,177, for a gun of the "take-down" pattern, and relating to means whereby the barrel and stock portions may be readily detached from each other, covers merely improvements on the prior art, and its claims must be narrowly construed. As so construed, *held* not infringed.

Appeal from the Circuit Court of the United States for the District of Connecticut.

For opinion below, see 139 Fed. 658.

Louis C. Raegener and Milton E. Robinson, for appellant.
Robert C. Mitchell, for appellee.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

PER CURIAM. The decision of the court below was that claims 1, 2, 3, 4, 7, and 8 of the patent to Hepburn (No. 584,177, granted June 9, 1897) were valid and had been infringed by the defendant. The assignment of error which has been argued upon this appeal is whether the court below correctly decided that the claims had been infringed.

The first four claims cover an invention in "take-down" guns, and specify the means whereby the barrel portion may be readily detached from the stock portion for convenience in packing and transporting the gun. The invention is more particularly described in the specification and illustrated in the drawings as relating to a magazine firearm, but the four claims are not limited to a firearm of that description, and the specification is carefully framed to exclude the necessity of such a limitation. The fourth claim is the broader of the four, and it is conceded that, unless that one has been infringed, infringement cannot be established of the other three. It reads as follows:

"(4) In a firearm, a barrel portion carrying a rearwardly-extending side plate, a stock portion carrying a forwardly-extending side plate, attaching-tenons carried by said plates, a recess in the stock portion to receive the tenon of the barrel portion, and a recess in the barrel portion to receive the tenon of the stock portion, and means for detachably holding said parts in an engaged position."

The parts enumerated reside in the breech-casing or receiver of the gun, which is a chamber between the barrel and stock for holding the lock and breech-operating mechanism of the gun. The claim cannot be given the broad construction due to a pioneer invention, because Hepburn was merely an improver in the prior art. This is sufficiently shown by the patent to Mason of December 6, 1892, which describes an invention which "consists in making the portion of the receiver which carries the barrel detachable from the remainder of the receiver which is attached to the stock, combined with mechanism for securely locking the parts together, yet so as to permit their ready sepa-

ration." The patent to Bennett of the same date is for a similar invention. Nor can the claim be construed to cover any arrangement of plates, mortices, and tenons in the receiver of a "take-down" gun, for assembling and detaching the barrel portion and the stock portion together with means for detachably holding the parts in an engaged position. This arrangement is shown in the Mason patent, and also in the Bennett patent. In each of these patents the receiver is assembled and detached by a lower plate attached to the stock portion, the side plates remaining attached to the barrel portion, and the side plates and the bottom plate are provided with tenons which fit into corresponding recesses in the other part of the receiver, and a screw is employed (as is done in the patent in suit) as the means for holding the assembled parts in an engaged position. What Hepburn did that was new was to assemble and separate a receiver at the side plates, by providing that one side plate should remain attached to the stock portion, and the other to the barrel portion. This, of course, involved the provision of suitable tenons and mortices.

It is apparent, from what has been said respecting the prior art, that the fourth claim must be limited to an arrangement of side plates and tenons substantially such as is shown in the patent. According to the specification, the side plates must be attached, one of them (D) to the barrel portion of the receiver, and the other (F) to the stock portion. The side plate attached to the stock portion is provided with a tenon (F') "projecting into an under-cut recess" in the barrel portion. The side plate (D) is provided with a tenon (D') "adapted to project under an abutment or projection (I) in the upper tang of the stock portion of the arm." The specification proceeds:

"Adjacent to the tenon (D') is a recess (D2) to correspond substantially to the shape of the abutment (I), so that when the parts are assembled the abutment (I) will enter therein, preventing vertical displacement of the parts."

The gun of the defendant has the side plates of the claim, and the side plate attached to the stock portion is provided with a tenon which may be deemed the equivalent of that shown in the patent; the tenon and its recess being substantially like those shown in the Bennett patent. But it does not have any tenon in the side plate which is attached to the barrel. The attempt, by the expert, for the complainant to treat the projecting head of the screw upon which the hammer is mounted as a tenon for this side plate, is too absurd to merit discussion. In the defendant's gun there is a tenon in the stock portion of the receiver which fits into a recess in the top plate of the barrel portion, but these are not the equivalents of any recess or tenon shown in the patent. The receiver of the patent has a top plate, but the top plate has no recess, and, of course, there is no corresponding tenon in the stock portion of the receiver. Considered collectively the arrangement of tenons and recesses is not that of the patent, because they do not co-operate in the same way. The specification says:

"The operation of detaching the stock portion from the barrel comprises: First, loosening the screw (J), second, swinging the stock so as to free the

tenon (D') from its recess; and, lastly, drawing the stock rearwardly to withdraw the tenon (F') from the recess in the reinforce (G). To attach the parts the steps are reversed."

In the defendant's gun, after loosening the screw the stock must first be drawn rearwardly to enable the tenon to be freed from its recess. Thus, while the tenons of the patent must first be loosened latitudinally, those of the defendant's gun must be loosened longitudinally.

The claim makes attaching tenons carried by both side plates one of its elements, and corresponding recesses to receive these tenons another element. As the defendant's gun has only one of the tenons and recesses, it does not infringe the claim. It was open to the defendant to avail himself of the arrangement by which one side plate was to be carried by the stock portion of the receiver, and the other by the barrel portion. If that in itself had been patentable, it is unfortunate for the complainant that a claim for such an arrangement was not inserted in the patent. But the patentee saw fit to limit the claims to such an arrangement when reinforced by a particular location of tenons and recesses, and the claim cannot be enlarged by construction by omitting these parts.

It remains to consider claims 7 and 8. Claim 7 is as follows:

"In a firearm, a barrel portion varying a rearwardly extending side plate, and an overlapping top piece, a projection carried by said side plate underneath said top piece and spaced apart therefrom, a reciprocating breech-bolt in the space between said top plate and said projection, and means for detachably holding said breech-bolt in its operative position."

It is admitted that all the elements of this claim are found similarly combined in the prior Hepburn patent, No. 434,062, except the "means for detachably holding said breech-bolt in its operative position." The only grounds on which complainant seeks to avoid anticipation are that the prior Hepburn patent was not for a "take-down" gun, and that the means therein shown for holding the bolt in position are inoperative when the gun is taken apart. But this claim is not confined, in terms, to a "take-down" gun, but is for the combination in "a firearm." Furthermore, it does not specify the elements covered by claims 1, 2, 3, and 4, which are essential in the construction of a "take-down" gun. It is admitted that the sole other difference in construction between the prior patent and that in suit consists in the means for holding the bolt in position. These means comprise a groove on one side of the breech-bolt and a corresponding rib on its support "by which means," as the patentee says, "the said breech-bolt is prevented from becoming accidentally detached from its support." This construction is nothing except the ordinary tongue and groove common in the general field of the arts, and is utterly devoid of any claim to patentable novelty. Even if it could be supported on any theory, it is not infringed by defendant's retaining device, which is mounted on its action bar, is not carried by the side plate, and operates in a totally different manner.

These same considerations apply to claim 8. This claim, however, does embrace the elements of a "take-down" gun, and is confined in

terms to a magazine firearm. We think, however, in view of the conclusions reached as to claim 4, that this claim cannot be broadened to embrace any construction other than that described in the specifications. It is clear from the language of this claim that the "means for detachably securing said parts in the operative position" are the retaining device for the breech-bolt covered by claim 7, from which claim it is only differentiated by the inclusion of the "take-down" elements in a magazine firearm.

The decree is reversed, with costs, and with instructions to the court below to dismiss the bill with costs.